IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **DANNY MARSHALL SMITH, as Personal Representative and Executor of the Estate of DEBRA OLOFSSON TRIMBLE, Deceased,** } } } } } | |
| Plaintiff, } | |
| v. } } | Case No.: 7:08-CV-01546-RDP |
| **BAMA URGENT MEDICINE, INC., et al.,** } } } | |
| Defendants. } | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

This matter is before the court on Defendant James R. Saxon's Motion to Dismiss Plaintiff's Second Amended Complaint, filed on August 18, 2009. (Doc. # 41). Defendant's Saxon's Motion seeks dismissal of Plaintiff's Second Amended Complaint (Doc. # 32) filed on July 1, 2009, which first added him as a party to this action. Saxon seeks dismissal of Plaintiff's[1] claims against him on the grounds they are untimely and do not relate back to the filing of the original Complaint. Saxon's motion has now been fully briefed and is ripe for decision. (Docs. # 41, 43 and 44).

### II.   BACKGROUND

Plaintiff filed her original Complaint in this matter on August 27, 2008. (Doc. # 1). In her Complaint, she asserted claims against various medical providers arising out of their alleged failure

---

[1] This matter was originally filed as a medical malpractice action by Debra Olofsson Trimble. Plaintiff Trimble subsequently died, and Danny Marshall Smith was substituted in place of the deceased for purposes of prosecuting this action. For ease of reference, Plaintiff will be referred to using the female gender, in reference to Ms. Trimble.

to diagnose and properly treat her symptoms of colorectal cancer. (*Id.*). Saxon is not named in either the original Complaint or Plaintiff's First Amended Complaint (Doc. # 29), filed on May 5, 2009. (*Id.*). Both the original and First Amended Complaints identify, in the "Parties" section, certain "John Doe" defendants. Specifically, both complaints contain the following description of the fictitious defendants:

> Defendants, John Doe 1 through John Doe 10, whose identities are unknown to Plaintiff at this time, will be identified and named with particularity in the event Plaintiff is able to identify one or more of them, who may also be liable for the acts and omissions complained of herein.

(Doc. # 1 at ¶ 7; Doc. # 29 at ¶ 7). Neither Plaintiff's original Complaint, nor her First Amended Complaint, contain any further description, or even any further mention, of the fictitious defendants, nor do they describe *any* conduct on the part of the fictitious defendants.

Further, neither the original Complaint, nor the First Amended Complaint, state *any* causes of action against any of the fictitious Defendants. Again, specifically, both complaints contain the following claims: Count I - Negligence and Medical Malpractice (Defendant Bama Urgent Medicine, Inc.); Count II - Negligence and Medical Malpractice (Defendant Higginbotham); Count III - Negligence and Medical Malpractice (Defendant Roberts); Count VI - Vicarious Liability of Defendant Bama Urgent Medicine for the Negligence of Defendants Higginbotham and Roberts; Count V - Negligence and Medical Malpractice (Defendant Lovely); Count VI - Vicarious Liability of Defendant Tuscaloosa MedCenter North for the Negligence of Defendant Lovely. (See Docs. # 1 and # 29, generally).

Plaintiff's Second Amended Complaint, filed on July 1, 2009, alleges the following with regard to Defendant Saxon:

> On or about October 9, [2006][2] Ms. Trimble was examined by James R. Saxon, M.D. According to his office notes, Ms Trimble reported to Defendant Saxon "significant dyspnea" and fatigue.  Dr. Saxon noted irregularities in Plaintiff's test results including opacity in Ms. Trimble's lung as noted on a CT scan and hypodensity in the liver.  Defendant Saxon took no further steps to investigate the irregularities or the cause of Ms. Trimble's dyspnea and fatigue.  Defendant Saxon prescribed Albuterol MDI and recommended a cholesterol lowering diet to Ms. Trimble.

(Doc. # 32 at ¶ 20.)  The Second Amended Complaint also adds, for the first time, Count VII - Negligence and Medical Malpractice against Saxon, and Count VIII - Wrongful Death against all Defendants.  The previous Counts remain the same.  (Doc. # 32).

## III. DISCUSSION

### A. Plaintiff's Claims are Time-Barred

Saxon has moved to dismiss Plaintiff's claims against him under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6).  Specifically, Saxon asserts that Plaintiff's claims against him are barred by the applicable statute of limitations and that Plaintiff's claims are not saved by the relation-back doctrine.

The parties agree that the applicable limitations period is governed by Alabama Code § 6-5-482(a), which provides, in relevant part:

> (a) All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such

---

[2] Plaintiff omits the year of this office visit in this paragraph.  However, the following paragraph begins, "Subsequently, during 2006," thus indicating that the office visit to Dr. Saxon occurred in October 2006.  Further, the parties' briefing reveals no dispute about the year of this visit. (See Doc. # 43 at 8).

3

>discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act ... .

Ala.Code 1975 § 6-5-482.  They disagree, however, about when Plaintiff's cause of action accrued and when the limitations period began to run.

Saxon argues that Plaintiff's cause of action accrued when the negligent acts or omissions with which *he* is charged took place, *i.e.*, October 2006.  Plaintiff argues that, for purposes of § 6-5-482, the cause of action did not accrue until later, *i.e.*, until the harm actually occurred, sometime before she actually was diagnosed with colorectal cancer on October 30, 2007.  (See Doc. # 43 at 8).  Plaintiff asserts, therefore, that her claims against Saxon are timely because they were filed within two years of October 2007.

Plaintiff provides a detailed analysis of *Crosslin v. Health Care Authority of City of Huntsville*, 5 So.3d 1193 (Ala. 2008) in support of her argument that her claims are not barred by the statue of limitations.  Defendant relies primarily on *Tobiassen v. Sawyer*, 904 So.2d 258 (Ala. 2004) in support of his argument that dismissal is appropriate because Plaintiff's claims are time-barred.  An analysis of those cases is appropriate.

In *Crosslin*, the plaintiff sought treatment at the emergency room for nausea, dizziness and weakness.  A battery of tests revealed that he had a tumor on his pituitary gland.  In discussing his treatment, the physician failed to inform the plaintiff about the tumor on his pituitary gland.  However, there were no allegations that the symptoms from which the plaintiff was suffering at the time of his ER visit and for which he sought treatment were at all related to the tumor.  Three years later, the plaintiff again presented to the ER, this time complaining of loss of vision in his right eye.  At this time, he was told of the tumor which had previously been discovered.  He underwent surgery

that was not fully successful. *Crosslin*, 5 So.3d at 1194.

In discussing when the plaintiff's injury occurred, the court stated that "the legal injury Crosslin is alleging is that, because Huntsville Hospital and Dr. Calvert did not inform him of the existence of the pituitary tumor when it was discovered on February 23, 2002, he did not have the condition remedied before the tumor worsened and other physical injuries were caused by it." *Id.* Interestingly, at this point in the opinion, the Alabama Supreme Court placed the following footnote distinguishing the case before it from the case on which Defendant in this case relies:

> FN3. Unlike other cases in which the medical provider's negligence is the failure to treat an existing malady, *see, e.g., Tobiassen v. Sawyer*, 904 So.2d 258 (Ala.2004), and *Grabert v. Lightfoot*, *supra*, discussed *infra*, the medical providers' alleged failure here, because of its unique nature, is not, in and of itself, alleged to have immediately caused an actual injury to Crosslin.

*Id.*

The *Crosslin* opinion then analyzed the distinction between the facts of that case and those of *Tobiassen* as follows:

> In [*Tobiassen*], the plaintiff presented himself for treatment at the emergency room of a hospital, *suffering from the following symptoms as a result of a stroke*: "'severe headache, impaired balance, numbness to only one side of the body, and tingling on only one side of the body.'" 904 So.2d at 259. As the opinion notes, the doctor who treated the plaintiff in the emergency room on that day *failed to discover the reason for the plaintiff's symptoms* and sent him home "'with no treatment for the stroke.'" 904 So.2d at 261 n. 2 and accompanying text. The plaintiff, *continuing to suffer symptoms from the stroke*, returned to the emergency room on the following day, at which time he was admitted to the hospital; an additional three days passed before he was told that he had suffered a stroke.

*Crosslin*, 5 So.3d at 1194 (quoting *Tobiassen*, 904 So.2d at 259) (emphasis added). Thus, the Alabama Supreme Court recognized that the facts before it in *Crosslin* were different from a case, such as *Tobiassen,* where the medical provider's alleged negligence is the failure to treat an *existing*

5

malady.  *Id.*

Plaintiff's claim in this case against Saxon alleges that he "failed to diagnose Plaintiff's cancer", that he "negligently fail[ed] to recognize or appreciate that Plaintiff's symptoms were consistent with the early stages of colorectal cancer, and [failed to] order[] a colonoscopy to be performed on Plaintiff Trimble, which would have confirmed such diagnosis", and that he "negligently failed to treat Plaintiff's cancer".  These are clearly allegations that Saxon was negligent in failing to diagnose an *existing* malady.  Thus, *Tobiassen*, rather than *Crosslin*, controls on the issue of when the cause of action accrued.

Under these facts, Plaintiff's cause of action accrued in October 2006, when Saxon allegedly "failed to diagnose Plaintiff's cancer", "negligently fail[ed] to recognize or appreciate that Plaintiff's symptoms were consistent with the early stages of colorectal cancer, and [failed to] order[] a colonoscopy to be performed on Plaintiff Trimble, which would have confirmed such diagnosis", and "negligently failed to treat Plaintiff's cancer".  Thus, unless Plaintiff's claims against Saxon relate back to the original Complaint, they are barred by the two-year statute of limitations in Ala.Code 1975 § 6-5-482.

**B.     Plaintiff's Claims Against Saxon Do Not Relate Back to the Original Complaint**

Federal Rule of Civil Procedure 15(c)(1)(A) "incorporates state law relation-back rules when state law provides the statute of limitations for the claims." *Mann v. Darden*, 630 F.Supp.2d 1305, 1310 (M.D. Ala. 2009) (citing *Saxton v. ACF Industries*, 254 F.3d 959 (2001)).  As to the propriety of fictitious party pleading, in federal court, parties are allowed to use fictitious names "when it appears that, for example, discovery will uncover the defendant's actual name." *Mann*, 630 F.Supp.2d at 1312 (citing *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).  Under

6

Alabama law, "[a]n amendment of a pleading relates back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to [Alabama] Rule [of Civil Procedure] 9(h)." *Id.*, at 1313 (citing *Saxton*, 254 F.3d at 965 (in turn citing the commentary to Rule 9(h))). "The combination of these rules 'allow[s] a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted.'" *Id.*, at 1313 (quoting *Saxton*, 254 F.3d at 965 (in turn quoting *Jones v. Resorcon*, 604 So.2d 370, 372 (Ala.1992))).

To avoid the statute of limitations bar through her fictitious party pleading, Plaintiff must show that "(1) the original complaint adequately described the fictitious defendant; (2) the original complaint stated a claim against the fictitious defendant; (3) the plaintiff was ignorant of the true identity of the defendant; and (4) the plaintiff used due diligence to discover the defendant's true identity." *Id.*, at 1313-14 (citing *Saxton*, 254 F.3d at 965 (in turn citing *Jones*, 604 So.2d at 372-73)). In this case, Plaintiff fails to satisfy the first, second, and fourth elements required to have her Second Amended Complaint against Saxon relate back to the original Complaint.

Regarding the first element, neither the original Complaint, nor the First Amended Complaint, adequately describes Saxon. Both complaints contain *only* the following description of the fictitious defendants:

> Defendants, John Doe 1 through John Doe 10, whose identities are unknown to Plaintiff at this time, will be identified and named with particularity in the event Plaintiff is able to identify one or more of them, who may also be liable for the acts and omissions complained of herein.

(Doc. # 1 at ¶ 7; Doc. # 29 at ¶ 7). In her opposition to Saxon's Motion to Dismiss, Plaintiff obviously argued that her claims against Saxon were not time barred. However, she failed to make

7

any alternative argument that her Second Amended Complaint relates back to either of her earlier Complaints. Considering the dearth of particularities about the fictitious Defendants contained in the earlier complaints, this omission is not surprising. Plaintiff's first two complaints fail to even identify the fictitious defendants as other physicians who may have treated Plaintiff. Therefore, Plaintiff's original complaint fails to adequately describe Saxon.

As to the second element, neither the original Complaint, nor the First Amended Complaint, states a claim against any of the fictitious defendants. As set forth above, Plaintiff's earlier complaints each contained six counts, and each of those counts were pled against a specific defendant or defendants; none of them can be construed as being pled against Saxon (or any fictitious party for that matter). (See Docs. # 1 and # 29, generally). Therefore, Plaintiff's earlier complaints fail to state a claim against Saxon.

Finally, as to the last element, although Plaintiff has indicated that she was ignorant of Saxon's identity at the time she filed her original Complaint, the facts before the court do not show that Plaintiff used due diligence to discover the fictitious defendants, and in particular, Saxon's true identity. In response to Defendant's motion to dismiss, Plaintiff submitted portions of her deposition in which she testified that she did not recall ever being seen by Saxon as evidence that Plaintiff was previously unaware of Saxon's identity. (Doc. # 43, Ex. A).[3] However, what these excerpts also reveal is that Plaintiff's counsel was aware of records from Dr. Saxon regarding his treatment of Plaintiff in October 2006 by at least December 11, 2008, the date when Plaintiff was questioned about these records in her deposition. Nonetheless, Plaintiff did not file a First Amended Complaint

---

[3] Similar excerpts from Plaintiff's deposition were also filed in support of Plaintiff's Motion for Substitution, Motion to File Plaintiff's Second Amended Complaint (Doc. # 31, Ex. C).

until May 2009. Even then, though, not only did she fail to identify Saxon as a defendant, she failed to further identify any of the fictitious defendants. Plaintiff's claims against Saxon were not filed until July 1, 2009, fully six months after Plaintiff's counsel was aware that Saxon had treated Plaintiff during the relevant time period. Therefore, it cannot be said that Plaintiff used due diligence to discover the defendant's true identity. *See Mann*, 630 F.Supp.2d at 1314 (five-month delay in seeking discovery cannot be considered using due diligence). Further, "under Alabama law, the court is not permitted to excuse this delay in the interests of justice, even given the egregious ... nature of the allegations in this case ... ." *Id.*, at 1314-15.

### IV.   CONCLUSION

For the reasons stated herein, James R. Saxon's Motion to Dismiss Plaintiff's Second Amended Complaint is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this   25th   day of September, 2009.

                                                                                  /s/ R. David Proctor
                                                                                  **R. DAVID PROCTOR**
                                                                                  UNITED STATES DISTRICT JUDGE